UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CR-20188-RUIZ(s)(s)

UNITED STATES OF AMERICA

v.

KIMBERLY RUIZ,

    Defendant.
_____/

**GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT AND MOTION FOR DOWNWARD VARIANCE**

The United States of America hereby files this Response to the Defendant's Objections to the Presentence Investigation Report ("PSI") and Motion for Downward Variance. *See* Mot. [DE185]. The Defendant objects to several facts in the PSI, the PSI's finding no additional factors that may warrant a variance or departure, and requests a downward variance to a "non-confinement sentence." Mot. At 1.

With a criminal history category of I and a total offense level of 19, the Defendant's guideline range is 30-37 months. PSI [DE222] ¶ 160. At this time, the United States respectfully requests a guideline sentence.

**I.    FACTUAL BACKGROUND**

From at least as early as December 2023 through on or about August 2024, the Defendant and her husband co-defendant Carlos Velez joined the ongoing money laundering conspiracy led by co-defendant Diovany Gutierrez. K. Ruiz Factual Proffer [DE136] at 1; PSI ¶¶ 43-45, 75-76. The Defendant and her co-conspirators laundered more than $40 million dollars, using fictitious businesses and bank accounts to legitimize bulk cash pick-ups from across the country. PSI ¶¶ 14-

20. The Defendant's, her husband's, and their co-conspirators' actions served a larger money laundering organization ("MLO") operating out of Colombia. *Id.* ¶¶ 14-20, 28-32.

The Defendant herself opened three business bank accounts, each at a different bank, for her fictitious business "D&A AMZ Seller LLC." *Id.* ¶¶ 43-45. The Defendant then provided the log-in information for these three accounts to husband and co-defendant Carlos Velez who, in turn, provided that information to the MLO. *Id.* The Defendant received commission payments ranging from 0.5 to 1% for the monies laundered through her business bank accounts. *Id.* ¶ 76. In total, more than 377 deposits of drug proceeds totaling more than $1,762,208.00 U.S. dollars were laundered through the Defendant's three fraudulent business accounts. *Id.* ¶¶ 44, 51, 76; Factual Proffer [DE136] at 3. Approximately 71 wire transfers were sent from these accounts. Factual Proffer [DE136] at 3. Each wire transfer had to be authorized by an OTP code. *Id.* at 3.

The Defendant pleaded guilty to conspiracy to commit money laundering on February 24, 2025. Plea Agreement [DE135] at 7; PSI ¶ 1.

## II.     ARGUMENT

Neither a downward departure nor variance based on the Defendant's family circumstances is appropriate here. While the Defendant's family circumstances may be difficult, they are, unfortunately, not so extraordinary as to warrant a departure or variance. The Sentencing Commission instructs that "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." U.S.S.G. § 5H1.6; *see, e.g., United States v. Allen*, 87 F.3d 1224, 1225 (11th Cir. 1996) (noting the same). District courts may depart on such grounds only in "extraordinary" cases. *Id.* (collecting cases). Application Note 1(B) of U.S.S.G. § 5H1.6 identifies three possible criteria that may warrant a departure based on loss of caretaking or financial support, the Defendant does not satisfy any of these. At all times the Defendant

2

participated in the conspiracy, she remained responsible for the caretaking of her three children.

Even in similar instances where Defendants had small children, such departures (admittedly, before the guidelines were advisory) were not warranted. *See, e.g., United States v. Magel*, 956 F.2d 1555, 1565 (11th Cir. 1992) (finding downward departure inappropriate when defendant had "two minor children to support, and a mother that lives with [defendant]"); *United States v. Cacho*, 951 F.2d 308, 311 (11th Cir. 1992) (determining downward departure based on defendant's four children was not warranted); *United States v. Brand*, 907 F.2d 31, 33 (4th Cir. 1990) (reversing downward departure that relied on defendant's being sole caretaker of two young children).

But even when courts have varied downward—to probation or brief periods of imprisonment—based on defendants' family circumstances, those cases are distinguishable because the defendants faced lower guideline ranges and their children were likely to enter foster care upon the defendants' incarceration. *See, e.g., United States v. King*, 201 F. Supp. 3d 167, 168-169 (D.D.C. 2016) (sentencing defendant, who pleaded guilty to a one count information charging conspiracy to defraud the United States, to home confinement and supervised released when the guideline range spanned 10 to 16 months' imprisonment because defendant was *sole* caretaker for seven-year-old daughter who would have become a ward of the state); *United States v. Gooch*, 2022 WL 1747334 at *1-3 (M.D. Ala. May 31, 2022) (varying downward from six months' incarceration to one day for defendant who pleaded guilty to theft of government property in light of the caretaking responsibilities the defendant had for two children diagnosed with autism and another who suffered from obsessive-compulsive disorder).

The Defense claims the Defendant's relationship with and commitment to her minor children, particularly her daughter, warrants a downward departure or variance. Mot. [DE185] at

3

5-7, 8-1. But there is nothing distinguishing the Defendant's current relationship with her minor children from the relationship she had with them at the time she committed the underlying criminal conduct.

The loss of caretaking and time with any child, for any defendant, is a terrible thing. But it is also a risk that an individual takes when engaging in repeated criminal conduct. At the very least in this instance, the Defendant has a supportive mother who may care for the children during the Defendant's imprisonment.

The Defense claims that the Defendant's conduct "falls at the least culpable level" and that her participation was driven by "financial renumeration." Mot. [DE185] at 8. While the Defendant attempts to minimize her role, she ignores that three of her co-defendants—Laura Ortiz Rojas, Jose D. Sanchez Moreno, and her husband Carlos Velez—laundered fewer funds and made fewer wire transfers through their own bank accounts than she did. PSI ¶¶ 44,77, 78. As for the Defendant's motive for these crimes, the promise of easy money has motivated others to commit all sorts of crimes—fraud, drug trafficking, and even violent acts—and should not serve as a basis for any form of leniency. When the Defendant's financial accounts were jeopardized after several banks decided to end their relationship with her business, she told co-defendant Gutierrez in Spanish, "If I don't receive them [checks] by tomorrow, I will go back to the bank and throw a fit iw ant my money, I'm going to call the police!" PSI ¶ 45.

The Defendant also claims she "simply followed instructions." Mot. [DE185] at 8. But she repeatedly chose to follow these instructions from her co-conspirators. She decided to create a fake business, open three fraudulent checking accounts, provide her log-in credentials to co-conspirators, and then repeatedly authorize the legitimization of dirty money through these accounts, all for 0.5 to 1 percent of a commission on these transfers.

Like her co-defendants who have been sentenced thus far, the Defendant has submitted letters from friends, family, and employers that speak of the Defendant's strength of character, commitment to family, and work ethic. Letters [DE224]. But also like her co-defendants, none of these commitments, obligations, or even loved ones prevented the Defendant from repeatedly laundering drug proceeds through her bank accounts.

The Defendant's crimes, and the additional criminal activity they enabled, are serious. A bottom of the guidelines sentence adequately considers the nature and circumstances of this serious offense as well as promotes respect for the law.

## **CONCLUSION**

Accordingly, the government respectfully requests the Court overrule the Defendant's objection to the PSI's lack of factors warranting a departure or variance, deny the Defendant's request for a downward variance, and sentence the Defendant to a guideline sentence.

Respectfully submitted,

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

By: */s/Katherine W. Guthrie*
Katherine W. Guthrie
Assistant United States Attorney
Court ID. A5502786
99 NE 4th Street, 6th Floor
Miami, Florida 33132
Tel: (305) 961-9117
Katherine.Guthrie@usdoj.gov

Certificate of Service

I certify that on June 9, 2025, I electronically filed this document with the Clerk of Court using the CM/ECF system. I also certify that a copy of the government's response was furnished to defense counsel by electronic mail delivery using CM/ECF.

                                        */s/ Katherine W. Guthrie*
                                        Katherine W. Guthrie
                                        Assistant United States Attorney